Case No. 4,667.

FARMERS' LOAN & TRUST CO. v. McKINNEY.

[6 McLean, 1.] [1]

Circuit Court, D. Michigan. June Term, 1853.

Mr. Clark, for plaintiff.
Mr. Howard, for defendant.

OPINION OF THE COURT. This is a motion to set aside the verdict of the jury on several points made at the trial, some of which were reserved. The action was an ejectment, to recover the possession of eighty acres of land in the state of Michigan. A patent for the land was issued the 5th of June, 1837, to Daniel Hudson. A quit claim deed was executed by Hudson to Samuel T. Gaines for the land, the 25th of September, 1836. which was acknowledged the 31st of December, 1852. And on the 28th of September, 1836, Hudson, by his attorney in fact J. Wright Gordon, conveyed the tract of land to Gaines by a deed of warranty. This deed was duly acknowledged on the same day it was signed, and recorded in the proper county, on the 17th of November following. The

[1] [Reported by Hon. John McLean, Circuit Justice.]

power of attorney under which the above conveyance was made was executed by Hudson and wife, in the state of New York, on the 26th of August, 1836, and was acknowledged on the following day, before a supreme court commissioner of the said state. It was received for record in the proper county in Michigan, on the 26th of November, 1836, and was recorded by the register. A mortgage on the land was duly executed by Gaines, to secure the payment of a sum of money to Ketchum, who assigned the same, in the state of New York, to the plaintiff, a corporation under the laws of New York, and doing business in that state, to secure the payment of a loan of money to him by the plaintiff. The debt not being paid, a bill was filed by the bank to foreclose the mortgage, in the circuit court of the United States, within the district of Michigan; and by its decision, the foreclosure was decreed, and the land was sold to the bank, at public sale, by a master in chancery, who was directed to sell it, and a deed in due form was made by him to the bank. And this action is brought to recover the possession of the same.

The quit claim deed is objected to, as having been executed by Hudson, before he received the patent from the government, and that under such a deed, the subsequently acquired title by Hudson did not enure to the benefit of his grantee. It is true, where a deed of quit claim has been made for land, to which the grantor has no title, a subsequently acquired title cannot operate to make good the quit claim. Such a deed can only transfer the title of the grantor at the time it was executed. If the first deed had contained a warranty it would have operated by way of estoppel to make it effectual. But the quit claim deed was not wholly inoperative. It appears from the patent, that full payment had been made by Hudson to the United States for the land, under the acts of congress, so that he had at least an equitable right to the land, and that, by the quit claim deed, passed to the purchaser. That deed was acknowledged by Hudson long after he obtained the patent, and it may be a matter of doubt whether such an acknowledgment, after having parted with the equity, does not give effect to the deed from that time. But it appears that three days after the execution of the quit claim deed, the attorney in fact of Hudson, executed a deed of warranty for the land to Gaines, which was duly acknowledged and recorded. The objection to this deed is, that the power, under which it was made, was defectively executed, and consequently was not valid. The power had but one witness, and, it is insisted that the law of Michigan, under which it was executed, requires two. When this power was offered in evidence there was no objection made to its admission. Unless an objection be made to evidence when offered, it will be presumed to be admitted by consent. And

if no motion is made to withdraw it from the jury, during the trial, the objection will not be heard on a motion for a new trial. But if this point were open on this motion, it could not be sustained. The territorial act of Michigan of the 12th of April, 1827 [Laws Mich. T. 1827, p. 258], provides that deeds for lands in the territory, when executed in any other territory or state, "shall be acknowledged and proved and certified, according to, and in conformity with, the laws and usages of the territory, state or country, in which such deeds or conveyances were acknowledged or proved," such deeds are declared valid in law, the same as if executed in the territory of Michigan in pursuance of its laws; which deeds shall be recorded, &c. The power of attorney objected to was executed in the state of New York in pursuance of its laws. Two witnesses are not required by the law of that state to a deed; and it was duly acknowledged before a commissioner, who has power to take such acknowledgments. Under the above statute this deed, as a part of the conveyance, has the same validity as if executed in Michigan, conformably to law. The power of attorney authorized Gordon to sell the lands of Hudson, in the state of Michigan, as was done in the above instance. The deed executed under the power contained a warranty which caused the title, subsequently acquired by Hudson, to enure to the benefit of his prior grantee. But it is objected that the plaintiff, being a corporation in the state of New York, cannot hold land in the state of Michigan. By the second section of the act of 1836, amendatory of the original charter, the plaintiff was authorized to take trusts, and to loan money on bonds and mortgages, &c.

As a general principle it is admitted, that no corporate functions can be communicated to an association of men, which they can claim a right to exercise, beyond the limits of the state in which their powers are given. But there are some things which a corporation may do in other states, as a matter of comity. In the Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 520, it is said: "It is well settled, that by the law of comity among nations, a corporation created by one sovereignty is permitted to make contracts in another, and to sue in its courts; and that the same law of comity prevails among the several sovereignties of this Union." But this comity may be prohibited by a settled course of policy of the state or by statute. Until this shall be done, however, the comity is presumed to exist in the several states of the Union. By the common law an alien can take lands by purchase, though not by descent; in other words, he may take by the act of the party, but not by operation of law. Nor is there any distinction whether the alien claims by grant or devise. Co. Litt. 2, 6. It is said the alien has capacity to take, but not to hold lands, and that lands so taken may be seized into the hands of the sovereign.

But until the lands are so seized, the alien has complete dominion over them. He is a good tenant of the freehold in a precipe, on a common recovery. 4 Leon. 84; Goldes 6, 102; 10 Madd. 125. And the alien may convey to a purchaser. Sheaffe v. O'Neil, 1 Mass. 256. Co. Litt. 526, would seem to be contrary, but his meaning may be, that the alien may convey a defeasible estate, which may be devested on office found. Fairfax v. Hunter, 7 Cranch [11 U. S.] 603. This rule coincides with the Jus Gentium. Vatt. 6, 2, c. 8, §§ 112, 114; Grotius, lib. 2, c. 6, § 16.

It seems to be a settled principle, that a title acquired by an alien by purchase, is not devested until office found. The devestiture requires some notorious act from which it may appear that the free-hold is in another. 1 Bac. Abr. "Alien," 6, 133; Page's Case, 5 Coke, 52. Even after office found, the king is not adjudged in possession, unless the possession be vacant. He must enter or seize by his officer. In Doe v. Robertson, 11 Wheat. [24 U. S.] 332, it was held, that "an alien may take real property by grant, whether from the state or a private citizen, and may hold the same until his title is devested by an inquest of office, or some equivalent proceeding." By the act of 31st of March, 1827 [Laws Mich. T. 1827, p. 272], aliens were authorized to purchase lands in the territory of Michigan, the same as citizens. The reference to aliens, in this respect, was made, therefore, on the ground that there was some analogy between them and the corporations of other states. In Leazure v. Hillegas, 7 Serg. & R. 313; Baird v. Bank of Washington, 11 Serg. & R. 418; the case of an alien is considered as analogous to that of a corporation. By an act of the state of Pennsylvania, of the 6th of April, 1833 [Laws Pa. 1833–34, p. 132], relative to the escheats of lands held by corporations, without the license of the commonwealth, etc., it is declared that no corporation, either of this state or of any other state, though lawfully incorporated, can in any case purchase lands within this state, without incurring the forfeiture of said lands to the commonwealth, unless such purchase be sanctioned and authorized by an act of the legislature. By this act the corporations of other states, in regard to the purchase of lands in the state, are placed on the same footing as corporations of the state of Pennsylvania; and the supreme court of that state, in the case of Leazure v. Hillegas, 7 Serg. & R. 313, as to the right of the Bank of North America to purchase, hold, and convey the lands in question, held, "that the right of a corporation, in this respect, was like an alien, who has power to take, but not to hold lands: and that although the land thus held by an alien, may be subject to forfeiture after office found, yet until some act is done by the government, according to its own laws, to vest the estate in itself, it remains in the alien, who may convey it to a purchaser; but he can convey no estate which

is not defeasible by the commonwealth." And this doctrine was sanctioned by the supreme court of the United States, in the case of Runyan v. Coster, 14 Pet. [39 U. S.] 131. In Michigan no law or policy of the state is shown, which prohibits corporations from purchasing lands in the state, and it is presumed that no such law, as in the state of Pennsylvania, exists in Michigan. It would seem, therefore, that the corporation of another state, as the Farmers' Loan and Trust Company, which by its charter is authorized to loan money on mortgages, may take a mortgage on lands in Michigan, there being no prohibitory law or policy of that state on the subject. And if such a security may be taken legally, it may be made available in the ordinary legal mode in such cases

It would seem that the principle which applies to aliens, in regard to the purchase of lands, should more strongly apply to corporations. They are constituted by associations of citizens, who, for the convenience of business, assume a name which, under the sanction of law, is binding on the individuals concerned. This artificial being, to use technical language, possesses all the qualities of a natural person, so far as regards the object of the corporation. And that such a legal organization, having the right to loan money on mortgages, without restriction of territory, should have a right to take mortgages wherever its loans are made, would seem to be a matter of course. And this may be safely assumed, where there is no prohibition. And where there are no laws of escheat, it may well be doubted, whether the land may not be conveyed to a purchaser, by the corporation, by an indefeasible title. The argument is not used beyond the necessity of converting the mortgaged estate into money, to satisfy the debt. This would carry out the transaction of the loan by both parties, and thus far, we think, may be legally done, subject to the comity of the state. This is no more the exercise of corporate powers, than in bringing a suit and by due process securing the fruits of the judgment.

But it is contended that the decree, on the equity side of the court, for the foreclosure of the mortgage and sale of the premises, is a nullity, the court having no jurisdiction. In the case of Sheldon v. Sill, 8 How. [49 U. S.] 448, the court held that where the mortgagor, a citizen of Michigan, assigned the mortgage to a citizen of the state of New York, the court could not take jurisdiction on a bill filed to foreclose the mortgage, as the assignment was within the 11th section of the judiciary act, which prohibits the assignee from suing in the federal courts on an assigned instrument, where the assignor could not sue, in the same court. And it is alleged that from the face of the proceedings it appears in the case now before us, that the assignor of the mortgage was a citizen of Michigan, and therefore

that his assignee could not sue in the circuit court. And the case of Williamson v. Berry, 8 How. [49 U. S.] 541, is cited. That was a case involving the right of the chancellor, under the acts of New York, to make an order authorizing Clark to convey a part of certain devised premises, in satisfaction of his debts. That case turned upon a construction of the acts referred to, under the decisions of the state, and the supreme court held the chancellor had not the power. That decision, therefore, can have no direct application to the case under consideration. Mr. Justice Wayne, in giving the opinion of the court, referred to the decisions of the state, very properly, as having a bearing on the case; but it is supposed that some of those decisions have gone too far, in permitting a record to be contradicted on the question of jurisdiction. There can be no doubt, however, that where the party had no regular notice, against whom the judgment or decree was entered, and there was no waiver of notice, by an appearance, that the judgment may be treated as a nullity. But it by no means follows, that where a judgment is erroneous, and might be reversed on a writ of error, that it can be so treated. It is a matter in this case of some nicety, as in all others, where the question arises, between what is void and what is voidable, by an appropriate procedure. The principal difficulty arises from a want of precision in the language of judges who have acted on this question, where a judgment is brought collaterally before the court. In such a case there can be no doubt, if from the record it appears the defendant had no notice, the judgment entered against him is absolutely void.

The jurisdiction must always appear in the proceedings of inferior courts where jurisdiction is limited; but the jurisdiction will be presumed, in a case before a court, where jurisdiction is general. It is true that the circuit court of the United States exercises a limited jurisdiction, but still, it has been held by the supreme court, that it is not an inferior court, in the above sense, so as to make void its judgments, for want of jurisdiction, though they may be reversible. In the case of Kempe v. Kennedy, 5 Cranch [9 U. S.] 173, Chief Justice Marshall said: "The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous, if the jurisdiction be not shown upon them. Judgments rendered in such cases may certainly be reversed, but this court is not prepared to say that they are absolute nullities, which may be totally disregarded." And in the case of U. S. v. Nourse, 9 Pet. [34 U. S.] 28, the chief justice says: "It is a rule to which no exception is recollected, that the judgment of a court of competent jurisdiction, while unreversed, concludes the subject matter as between the same parties." In Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 449, the court say: "The errors of the court, however apparent, can be examined only by an appellate power." And they say: "The line which separates error in judgment from the usurpation of power is very definite; and is precisely that which denotes the cases where a judgment or decree is reversible only by an appellate court, or may be declared a nullity collaterally, when it is offered in evidence in an action concerning the matter adjudicated, or purporting to have been so. In the one case, it is a record importing absolute verity; in the other, mere waste paper." In Simms v. Slacum, 3 Cranch [7 U. S.] 300, the court say: "The judgments of a court of competent jurisdiction, though obtained by fraud, have never been considered absolutely void." In the case of McCormick v. Sullivant, 10 Wheat. [23 U. S.] 192, it is said: "The reason assigned by the replication, why that decree cannot operate as a bar, is that the proceedings in that suit do not show that the parties to it, plaintiffs and defendants, were citizens of different states, and that, consequently, the suit was coram non judice, and the decree void. But this reason," the court say, "proceeds upon an incorrect view of the character and jurisdiction of the inferior courts of the United States. They are all of limited jurisdiction; but they are not on that account, inferior courts, in the technical sense of those words, whose judgments, taken alone, are to be disregarded. If the jurisdiction be not alleged in the proceedings, their judgments and decrees are erroneous, and may, upon a writ of error, or appeal, be reversed for that cause. But they are not absolute nullities." The above cases would seem to be conclusive on this point. If all judgments in the federal circuit courts were to be held as nullities, where the jurisdiction is not alleged, no one can tell the extent of mischief which might result. If they are nullities, no titles under such judgments, or other rights, would be available. A want of the proper allegation of citizenship of the parties, is often the result of inattention, in cases where no defences are made. The decisions above stated, are wise, as they protect substantial interests from a mere technicality.

Where the citizenship of the parties is not averred in the pleading, there is a want of jurisdiction as palpably as the face of the papers can present. No presumption can be drawn to supply the want of this averment. A court of errors on a writ of error, would necessarily reverse for want of jurisdiction in such a case. And if, as the counsel allege, it does appear that the assignment of the mortgage in the case under consideration, was made by a citizen of Michigan, that cannot affect the character of the decree. It may be reversed on error or appeal, but the judgment is not a nullity. The judgment of the circuit court may be treated as a nullity, when the party, against whom the judgment or decree was entered, had no notice of the suit. But the judgment or decree cannot be

so treated when the parties are before the court, on account of any omission or error on the face of the proceedings. This would seem to be the true distinction in such cases. If the proceedings could be examined, to ascertain when an error had intervened which would be fatal to the jurisdiction, all judgments would be declared a nullity, which might be reversed, for want of jurisdiction, on a writ of error or on appeal. No court can sanction such a principle of judicial action.

For the reasons above stated, the motion for a new trial is overruled, and judgment must be entered in the case.